No. 3925

Second Circuit

(First Division)

BETTS v. SHREVEPORT RYS. CO.

(November 18, 1931. Opinion and Decree.)
(December 9, 1931. Rehearing Refused.)

Bryan E. Bush, of Shreveport, attorney for plaintiff, appellee.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

TALIAFERRO, J. Plaintiff alleges that while a passenger on one of defendant's street cars in the city of Shreveport she received personal injuries, for which she sues to recover the sum of $10,000. To be more specific, she alleges that on the day named in her petition she was riding as a passenger on a street car of the defendant company and when the car reached a certain corner in said city it came to a full stop and while she was alighting from the car she placed her foot upon the step thereof, the step having been apparently lowered by the motorman, and it gave way under her weight, causing her to fall from the step to the pavement, thereby inflicting the damages as alleged. Again, further

along in plaintiff's petition she alleges: "that all of her injuries are the result of the step not being lowered to the proper and ordinary place either by the said step and mechanism controlling said step not being in good repair and safe condition, or by the negligence of the motorman of said car and agent of said Railways Company in not causing said step to be lowered to the proper level, so that it would be steady when your petitioner placed her weight upon same."

The defendant company denied any fault or negligence on its part, but alleges plaintiff failed to exercise due care in descending from the step in that she did not maintain her hold on the hand hold of the car, and while wearing very high heeled pumps negligently and carelessly stepped too near the edge of the step and caught her heel on its edge, which caused her to fall. That the proximate cause of the accident was want of proper care on the part of plaintiff in alighting from the car, and in the alternative pleaded contributory negligence on the part of plaintiff in bar of her effort to recover damages from it.

There was judgment in favor, of plaintiff in the amount of $750. Defendant has appealed.

It will, therefore, be easily discerned that this case involves merely a question of fact, and it becomes necessary to determine what was the proximate cause of the accident which unquestionably caused injury to plaintiff.

The plaintiff as a witness in her own behalf testified as follows concerning the circumstances and manner of her alighting from the street car:

"Q. Did you fall from the step or from the platform of the car?
"A. From the step.
"Q. Did you look out the door and down at the step and see that it was properly lowered before you started to step down?
"A. No, sir; just stepped on out.
"Q. Why didn't you do that?
"A. I usually do that, step on out when they open the door.
"Q. Was it already down?
"A. I just stepped on out like it was customary to do. I figured it was down.
"Q. When your foot reached the step was it down?
"A. I fell down on the pavement, on the sidewalk.
"Q. What happened to the step?
"A. It went down at least two or three inches after I stepped on it."

The witness R. A. Geheringer, tendered on the part of the plaintiff, testified as follows, relative to what he saw at the time of the accident:

"Q. While you were there, did you see anything unusual happen?
"A. Yes, sir; I was there waiting for Miss Betts; had made arrangements to go to a show with her and as the car of the Shreveport Railway Company came up, I saw Miss Betts on the car and saw her leave the car. I saw her grab as if she was going to fall, so I went over to see and when I got there she was laying flat on her stomach."

And this witness further testified, when being cross-examined:

"Q. Did the plaintiff in this case, state that the motorman had raised the step while she was getting off and that caused the fall?
"A. She did.
"Q. That is what she told you?
"A. Yes, sir; she did.
"Q. Where was it that she made the statement that she did make; that the motorman raised the step and that caused her to fall?
"A. That night.
"Q. Right there at the time?
"A. No, I don't think it was there.
"Q. After she got home?
"A. Yes, sir; I think it was after she had gotten home. She didn't do much talking on the way."

The witness Mrs. Dick Richards, tendered on the part of plaintiff, testified as follows:

"Q. Did you see her when she started to fall?

"A. Naturally I was looking at her when she come off of the street car and as I remember she was the only one that got off and I naturally noticed as she grabbed, and I knew something was giving down because I have had that happen to me.

"Q. At the time she started to fall was she on the step?

"A. She was coming down falling from the top, coming on down and I saw. her fall. Evidently she was on the second step.

"Q. And not on the top of the platform?

"A. Yes, she was down on the step."

And again this witness testified:

"Q. Did you recognize her?

"A. Yes, sir; she alighted from the street car and I noticed she got out, that she grabbed the bars."

. The evidence on the part of defendant shows that at the time of the accident the motorman had opened the door for plaintiff and she had stepped from the platform to the step; that the door is opened and the step is lowered by the motorman by one application of a lever, the door and step working togetner; that when the door is fully opened the step is horizontal and is locked. That at the time of the accident the plaintiff was wearing high heeled shoes, commonly called pumps, and that plaintiff was quite fleshy and heavy; that the door and step of the car in question were in good mechanical condition.

The defendant introduced as a witness one Billy Burleson, who gave evidence as follows:

"Q. Do you remember last December, when a lady fell from the street car over here on the corner of Marshall and Texas streets?

"A. Yes, sir.

"Q. Where were you standing?

"A. Sir?

"Q. Where were you standing?

"A. I was. standing there at the corner.

"Q. Did you see the car stop?

"A. Yes, sir.

"Q. Did you see the motorman open the door?

"A. Yes, sir.

"Q. Tell us what you saw.

"A. I saw the lady come to the platform, she was going to get off the street car, looked to me like her heel turned on the step and she fell down and I went there and tried to pick her up."

It will be seen that plaintiff's evidence fixing the cause of her fall as being due to negligence on the part of the motorman in not fully lowering the step of the street car is not positively corroborated by the testimony of any other witness in the case and her version of the matter on the witness stand is in direct conflict with that made by her to Mr. Geheringer, a few hours after the accident.

Among the injuries plaintiff alleges to have been received by her as a result of her fall from the street car is that to her left arm, for which she asks $1,500. The evidence clearly shows that her left arm was not injured in the accident and she made no complaint about that limb being injured until quite a while thereafter. The physicians who examined plaintiff's left arm state that there was a fungus growth on it which was not due to an injury or wound such as would be caused by a fall. This claim for damages was abandoned by plaintiff's counsel in open court after the physicians had testified concerning same. Plaintiff verified her petition by subscribing to the usual affidavit. We mention these facts as they tend to reflect on the part of plaintiff a disregard of the importance of confining her case to the true

happenings at the time of her accident; and, to some extent, her credibility is affected thereby.

We believe the Burleson boy's evidence correctly shows what happened to plaintiff as she attempted to alight from the car. He was within a few feet of the place of accident and in a better position to observe things than any other witness. This evidence corroborates that given by the motorman touching the condition of the door and car steps after he had applied the lever in order to allow plaintiff to leave the car.

Plaintiff was accustomed to riding on defendant's cars and knew well how they were controlled and operated with respect to taking in and permitting passengers to retire therefrom. It was her duty to observe care and caution while descending the car's steps and especially so in view of her excessive weight and the character of shoes worn by her at the time. We do not think she observed the degree of care and caution required of her. She admits she did not look to see if the steps had been properly lowered but simply assumed them to be in proper position. Even if the steps had given down an inch or two under her weight, if she had availed herself of the hand holds beside the car's door she would have maintained her balance and not fallen. It was her duty to observe the condition of the steps, after the door was opened, and wait until it was safe to put her weight upon them before trying to alight from the car. This is said by us as answer to plaintiff's theory of the cause of accident; not to meet true facts, for we do not believe the steps gave to plaintiff's weight. We believe one of the high heels of the pumps she wore when injured caught in or slipped on the steps, causing her to lose her balance and fall.

There is no presumption of negligence on part of the carrier simply from the fact of an accident.

"A carrier, street car company, is not made liable to a passenger merely by reason of the happening of an accident, and if it can show that the cause of the accident was something beyond its control, or was the negligence of the passenger injured, no liability results. It is not an insurer of the safety of passengers." Nee v. N. O. Public Service, Inc., 11 La. App. 1, 123 So. 135; Morris v. I. C. Ry., 127 La. 445, 53 So. 698, 31 L.R.A. (N. S.) 629; Bemiss v. N. O. C. & L. Ry., 47 La. Ann. 1671, 18 So. 711; DeBlanc v. T. & P. Ry. Co., 6 La. App. 433.

The law applicable to plaintiff's situation, even if it be conceded that defendant's agent was negligent to any extent, is well stated in the case of Wood v. J. C. & K. et al., 34 La. Ann. 1086, viz.:

"A railroad company is not liable to a passenger for an accident which the passenger might have prevented by ordinary attention to his own safety, even though the agents in charge of the train were also remiss in their duty."

In reaching our conclusion on the facts of this case we have not been unmindful of the rule which requires that great weight should be given the findings of the trial judge on such questions, and for that reason we have given mature consideration to the evidence, but are convinced he erred in resolving the facts of the case in favor of plaintiff.

For the reasons herein assigned the judgment appealed from is annulled, avoided, and reversed, and there is now judgment dismissing plaintiff's suit and rejecting her demands with costs.